UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:09-CR-67-JMH-HAI |
| | ) | No. 5:13-CV-07315-JMH-HAI |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| ROBERT HERALD BARNETT, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On September 27, 2013,[1] Defendant Robert Herald Barnett filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, and later filed a supporting memorandum.  D.E. 98; D.E. 107.  Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to Magistrate Judge J. Gregory Wehrman for a recommended disposition.   On March 28, 2014, Judge Wehrman recused from further involvement in the case and the matter was reassigned to the undersigned.  D.E. 120.  Fully briefed, the motion is ripe for review.  For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255.   Therefore, the Court **RECOMMENDS** that his § 2255 motion (D.E. 98) and motion for an evidentiary hearing (D.E. 140) be **DENIED**.  The Court further **RECOMMENDS** that no Certificate of Appealability be issued.

---

[1] Although Defendant's Motion was not docketed by the Clerk until October 8, 2013, Defendant declared under penalty of perjury that he placed the motion in the prison's mailing system on September 27, 2013.  D.E. 98 at 17.  Thus, the Court treats the motion as having been filed on October 8, 2013.  *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 270–72 (1988) to section 2255 motions).

## I. BACKGROUND

Because an understanding of the evidence against Defendant is essential to the Court's analysis, that evidence is described here in detail.  In February 2009, Defendant indicated to a business acquaintance, Johnny Pennington, that he wanted someone killed and asked if Pennington knew anyone who "could get rid of someone."  D.E. 79 at 50.  Defendant indicated that one of the people he wanted taken care of was Bill Polan, a resident of West Virginia.  *Id*. at 51-52.  After the conversation, Pennington contacted an attorney and then the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and agreed to cooperate in an undercover investigation of Defendant.  D.E. 78 at 25-26.  Pennington agreed to introduce an undercover ATF agent, posing as a hitman from Nevada, to Defendant.  *Id*. at 36-37, 41-42.

A recorded meeting between Pennington and Defendant occurred on March 3, 2009.  *Id*. at 34; D.E. 106-2.  Defendant was recorded indicating that he wanted the hitman to remove the target's eyes, thumbs, and testicles.  D.E. 106-2 at 15.  Further, Defendant stated that the hitman should "take care of" any witnesses.  *Id*. at 22.  Defendant agreed to provide the hitman with a gun, a silencer, and ammunition.  *Id*. at 22-24.

On March 5, 2009, the ATF agent instructed Pennington to call Defendant and inform him that the hitman had arrived and wanted to meet.  D.E. 78 at 41-43.  Defendant took the call and indicated to Pennington that he did not have access to any firearms until later in the day.  D.E. 106-3 at 2-3.  The agent had purchased a prepaid cellular telephone and configured the settings so that it would appear to be a telephone number from Reno, Nevada.  D.E. 78 at 42-43.  Defendant called the agent at this number and agreed to meet with the agent and "complete the package" later that evening.  *Id*. at 45-46; D.E. 106-5 at 2-3.  Pennington, the agent/"hitman,"

and Defendant met in a motel room in Mt. Sterling, Kentucky.  D.E. 78 at 47.  The ATF agent had placed a hidden video recorder in the motel room prior to Defendant's arrival.  *Id*. at 47-48.

At this meeting, Defendant was recorded again reiterating that he wanted the "hitman" to return with the target's testicles, eyes, and thumbs.  D.E. 106-6 at 23.  After the agent explained that this process was likely to kill the target, Defendant indicated he wanted the target shot in the head.  *Id*. at 25.  Defendant indicated that the hitman should go ahead and do his "job" rather than get caught, even though he would prefer that the hitman leave the victim alive and bring him back the "products."  *Id.* at 26.  Defendant had Pennington turn over five thousand dollars (the proceeds from a cashier's check that Defendant had conveyed to Pennington on February 25, 2009) and indicated that final payment of four thousand dollars would be made after the job was done.  *Id*. at 42.  Defendant told the agent that he would provide a machinegun for the job that was "impossible to trace" because he had removed the serial number from the gun.  *Id*. at 35-36.

Later that evening, Pennington and Defendant returned to Mt. Sterling and met with the agent.  D.E. 78 at 55-56.  Again, this meeting was video recorded by the agent.  *Id.*  At this meeting, Defendant gave the agent a machinegun, a silencer to screw into the machinegun, a Ruger pistol with an attached silencer, and 409 rounds of ammunition.  *Id*. at 57-60.  Also at this meeting, Defendant told the agent to forget about taking the finger as proof of the job and to "just leave him laying."  D.E. 106-7 at 13.  He further instructed the agent that if the target's son was there to "[l]et him go to heaven."  *Id*. at 18.  The parties agreed to meet in Salyersville, Kentucky, the next day after the job was done.  *Id*. at 34-38.

The next day, Pennington called to set up the meeting and indicated that the agent said Defendant would be "very happy."  D.E. 106-8 at 2.  Defendant was arrested upon arrival at the

3

meeting spot.  D.E. 79 at 3.  Three thousand dollars in one hundred dollar bills were seized from Defendant upon arrest.  *Id*. at 4-5; D.E. 106-17.

On April 3, 2009, Defendant was indicted by a federal grand jury.  The eight count indictment charged in the first two counts that Defendant used a facility of interstate commerce with intent that murder be committed and that he caused another to travel in interstate commerce with intent that murder be committed in consideration for receipt of things of pecuniary value, both in violation of 18 U.S.C. § 1958(a).  D.E. 24 at 1-2.  Counts Three and Four charged that Defendant transferred firearms to commit crimes of violence and possessed a machinegun during the commission of Counts One and Two, both in violation of 18 U.S.C. § 924.  *Id*. at 2-3. Counts Five and Six charged that Defendant unlawfully possessed a machinegun and possessed a firearm with a removed serial number, both in violation of 18 U.S.C. § 922.  Counts Seven and Eight charged that Defendant possessed firearm silencers that were not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d).  *Id*. at 4.  Brent Caldwell was retained to represent Defendant.  D.E. 28.

On August 7, 2009, a federal grand jury returned a superseding indictment that charged Defendant with an additional five counts all premised upon conversations with fellow inmates while Defendant was in pre-trial custody.  D.E. 24.  Counts Nine and Eleven charged that Defendant solicited, on two different occasions, another person to kill an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, in violation of 18 U.S.C. § 1512(a)(1)(A), all in violation of 18 U.S.C. § 373.  *Id*. at 5-7.  Additionally, Counts Ten and Twelve charged that Defendant, on two different occasions, solicited an individual to kill another person with the intent to prevent the attendance and testimony of that person at his trial in violation of 18 U.S.C. § 1512(a)(1)(A) and 18 U.S.C. § 373.  *Id*.  Finally, Count Thirteen charged that Defendant

knowingly and corruptly persuaded another person with the intent to influence the testimony of that person at his trial, in violation of 18 U.S.C. § 1512(b)(1).  *Id*. at 7.

After several competency evaluations, Defendant was deemed competent to stand trial. D.E. 34.  Defendant's jury trial was held on June 8-11, 2010, with Brent Caldwell and Bryce Caldwell representing Defendant.  D.E. 42-45.  The jury found Defendant guilty of Counts One through Eight and Count Thirteen.  D.E. 49.  Defendant was found not guilty of Counts Nine through Twelve.  *Id* at 2.  On September 28, 2010, District Judge Forester entered a judgment against Defendant and sentenced him to a term of imprisonment of four hundred and eighty months with a thirty-six month term of supervised release to follow.  D.E. 58.

Defendant filed a notice of appeal on October 8, 2010.  D.E. 60.  The Court of Appeals appointed Paul Croushore to represent Defendant on appeal.  D.E. 83.  On June 29, 2012, the Sixth Circuit entered an order affirming the district court's judgment.  D.E. 90.  The Sixth Circuit rejected Defendant's first argument that insufficient evidence supported his conviction.  *Id* at 3-5.  The Sixth Circuit held that all the evidence, when viewed in the light most favorable to the prosecution, supported the jury's finding that Defendant had the intent to have the target murdered.  *Id*. at 2-3.  Defendant's contentions that the prosecution failed to present proof of the definition of murder under West Virginia law and that the prosecution did not prove that he caused anyone to travel in interstate commerce were rejected.  *Id*. at 3-4.  Finally, the Sixth Circuit held that Defendant's contention that he should be resentenced due to of a violation of Federal Rule of Criminal Procedure 32(e)(2) was incorrect because Defendant had failed to show this violation affected a substantial right under plain error review.  *Id*. at 5-6.

Defendant did not file a petition for writ of certiorari to the United States Supreme Court. On September 27, 2013, Defendant filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside,

or Correct Sentence by a Person in Federal Custody.  D.E. 98.  In his motion and attachment, Defendant asserts ten grounds for relief:

1.      Ineffective assistance of counsel during plea negotiations and pre-trial stages. *Id*. at 8.

2.      Ineffective assistance of counsel for failure to move to suppress statements of witnesses under the Sixth Amendment.  *Id*. at 13.

3.      Ineffective assistance of counsel for failure to argue that the United States manufactured federal jurisdiction.  *Id*. at 15.

4.      Ineffective assistance of counsel for failure to raise a Second Amendment defense to the firearms charges.  *Id*.

5.      That District Judge Forester usurped the role of the jury by finding that one of the firearms was a machinegun.  *Id*.

6.      Ineffective assistance of counsel for failing to raise a defense that Defendant possessed the machinegun prior to 1986.  *Id* at 16.

7.      Ineffective assistance of appellate counsel for failure to raise a valid issue on appeal.  *Id*.

8.      Ineffective assistance of counsel for failure to raise an entrapment defense.  *Id*.

9.      Ineffective assistance of counsel for failure to "adequately raise that the fact that 'some state law' has been violated is an essential element of the murder for hire statute that must be found by the jury."  *Id*.

10.     Ineffective assistance of counsel for failure to move to suppress all statements made during illegal wire-taps.  *Id*.

Defendant filed a supplemental memorandum in support of his § 2255 motion on January 14, 2014. D.E. 107. The United States filed a response to this memorandum on February 3, 2014, asserting that to the extent that Defendant attempted to raise new grounds in his supplemental memorandum, those grounds should be denied as untimely. D.E. 110.

On February 25, 2014, Judge Wehrman entered an order concerning the viability of the arguments raised in Defendant's supplemental memorandum in support of his § 2255 motion. D.E. 114. Judge Wehrman determined that, pursuant to the mailbox rule, the supplemental memorandum was filed on January 14, 2014, and thus outside the one-year statute of limitations imposed on § 2255 motions. *Id*. at 4. Judge Wehrman found that any of Defendant's grounds contained in the supplemental memorandum that did not relate back to the grounds in the timely filed § 2255 motion were barred by the statute of limitations. *Id*. at 4-5. Thus, several of Defendant's grounds for relief in his supplemental memorandum (D.E. 107) were found to be barred by the statute of limitations. *Id*. at 4-10.

Specifically, the first four, sixth, and tenth arguments raised in the supplemental memorandum were deemed to relate back to certain grounds in the original motion. *Id*. at 6-7. Therefore, the claims in the original motion were properly supplemented by these arguments contained in the supplemental memorandum. In regards to his fifth argument, however, only part of the claim from the supplemental memorandum was deemed to relate back to the original motion. *Id*. at 7. Any claims in the supplement that trial or appellate counsel was ineffective for failing to argue that the District Judge usurped the role of the jury were deemed time-barred. *Id*.

Judge Wehrman further found that the entirety of seventh argument in the supplemental memorandum did not relate back because of the terse and vague language of Ground Seven in the original motion. *Id*. at 8. Thus, Defendant is limited to the claim in the original motion. *Id*.

at 8-9.  Similarly, Judge Wehrman found that the eight argument in the supplemental brief only relates back to the original to the extent that it explains why counsel should have requested an entrapment instruction.  *Id*. at 9.  Finally, Defendant's ninth argument in his supplemental brief was deemed to not relate back because it was found to be a newly-raised argument which merely referenced the ground in the original motion.  *Id*. at 10.

In light of this order, the United States filed a response to Defendant's supplemental brief on March 25, 2014.  D.E. 117.  On March 28, 2014, the case was reassigned to the undersigned.  D.E. 120.  Defendant filed a motion for an evidentiary hearing on July 1, 2014.  D.E. 140.

## II.  DISCUSSION

### A.  Defendant is Not Entitled to an Evidentiary Hearing

Defendant seeks an evidentiary hearing to establish facts to support his claims in Ground One that he was denied effective assistance of counsel.  He avers that his counsel advised him not to accept any proposed plea agreement.  D.E. 140 at 1; D.E. 98 at 8-10.  Defendant claims that, had his attorney not advised him to refuse a plea deal, he would have accepted a plea deal with a thirty-year sentence.  D.E. 140 at 7-8.  He claims that his attorney advised him of a ten-year plea offer, but advised him not to take it because Caldwell "guaranteed" a victory at trial, that Caldwell was "absolutely sure" that Defendant could not be convicted of any of the charges as a matter of law, and that Defendant would "never" be found guilty.  D.E. 107 at 2; D.E. 98 at 8-10.

An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b); *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("an evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'")

(quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). Defendant's burden in establishing that he is entitled to an evidentiary hearing is "relatively light." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). However, a "full blown evidentiary hearing'" is not required in every case. *Smith v. United States*, 348 F.3d 545, 550-551 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). An evidentiary hearing is not required when "the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arrendondo*, 178 F.3d at 782 (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

Here, Defendant is not entitled to an evidentiary hearing because his claims that his attorney guaranteed a victory at trial and that Defendant could not be convicted on any of the charges as a matter of law are inherently incredible. As summarized above, the United States' case against Defendant was particularly strong. The United States had multiple recordings, made on different occasions, showing Defendant indicating his desire for the crimes to be committed. Defendant physically conveyed the guns, silencers, ammunition, and money to the ATF agent, and was arrested with the final payment at the meeting spot.

Brent Caldwell is a highly experienced and capable counsel, and is well-known to the Court professionally. He had an opportunity to review the hours of recorded phone calls and meetings, and the rest of the evidence the United States had against Defendant. D.E. 106-1 at 1. The Court cannot accept as true that Caldwell would "guarantee" a victory at trial and an acquittal on all counts as a matter of law in the face of such strong evidence, particularly because jury trials are inherently risky and unpredictable. While the standard to receive an evidentiary

hearing is "relatively light," the Court cannot accept Defendant's allegations because they are inherently incredible.  Defendant's factual assertions strain credulity beyond the breaking point.

To the extent Defendant requests an evidentiary hearing concerning Grounds Two through Ten, these requests are denied.  For the reasons stated below, Defendant's factual allegations do not necessitate a hearing because the record conclusively shows that Defendant is entitled to no relief.

### B.  Ground One: Ineffective Assistance of Counsel
### During Pre-trial and Plea Negotiations

All but one of Defendant's claims in his § 2255 motion are based on purported ineffective assistance of counsel.  To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence).  In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 688.  However, a defendant is not permitted to second-guess trial counsel's strategic decisions.  *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689 (internal quotations omitted). Notably, "[a] fair assessment of

attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.   In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.   When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 695.   Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

Defendant's first claim is of ineffectiveness during the plea and pretrial stages. Specifically, Defendant asserts that counsel advised not to take a plea deal because counsel guaranteed a win at trial (D.E. 98 at 9) and failed to file a motion to dismiss for a variety of reasons (D.E. 107 at 1-3).   Defendant also suggests that counsel was ineffective for failing to raise an entrapment defense, however, that argument is addressed below in Ground Eight that specifically focuses upon that issue.

A criminal defendant has a right to effective assistance of counsel during plea negotiations. *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012).   Central to Defendant's claim is that Defense counsel instructed him to reject all plea offers because counsel guaranteed victory at trial, that counsel was "absolutely sure" that he could not be convicted on any of the charges as a

matter of law, and that Defendant would "never" be found guilty. D.E. 98 at 8-10; D.E. 107 at 2. As found above, Defendant's claims that counsel guaranteed him a victory at trial are inherently incredible and the factual basis for this portion of Ground One therefore collapses. As a result, Defendant has neither established deficient performance nor prejudice per *Strickland* or *Frye*.

Defendant's second argument in Ground One is that defense counsel was ineffective for failing to raise "pre-trial motions to dismiss his indictment for failure to raise a specific felony offense & multiplicious & Dupliciously [sic] charged indictment as to machinegun being alleged in basically all counts charged within the indictment." D.E. 107 at 3. In addition to this basis for filing a motion to dismiss, Defendant states that the facts did not support the indictment as charged, the indictment failed to charge Defendant with necessary elements, and the indictment failed to show "a time and place were [sic] any federal crime took place through a commmunication [sic] facility, there was no phone number, nor any name of the parties speaking, nor the time of day & exact date, to state a specific felony offense." *Id.* at 2.

Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Strickland v. Washington*, 466 U.S. 688, 697 (1984). Here, Defendant has failed to establish prejudice as to these claims. First, Defendant claims that the indictment was generally insufficient and therefore counsel should have moved to dismiss the indictment. Federal Rule of Criminal Procedure 7 requires a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). There are two constitutional requirements for an indictment to be sufficient. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "[F]irst [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same

offense." *Id.* (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense. *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992).

The superseding indictment is sufficient. All counts in the superseding indictment stated the offenses by using the language of the statutes themselves. *Compare* D.E. 24, *with* 18 U.S.C. §§ 373, 922(k), 922(o)(1), 924(h), 924(c)(1), 1512(b)(1), 1958(a), 26 U.S.C. § 5861(d). Moreover, each count sufficiently described the offenses so that Defendant was informed of the nature of the charge against him. *See* D.E. 24. Therefore, the indictment was sufficient under Federal Rule of Criminal Procedure 7.

To the extent that Defendant is alleging counsel should have moved to dismiss the indictment as duplicitous, he cannot establish a "reasonable probability" that a motion to dismiss on this basis would have been successful. "A duplicitous indictment is one that charges separate offenses in a single count.'" *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997 (quoting *United States v. Duncan*, 850 F.2d 1104, 1008 n.4 (6th Cir. 1988)). The superseding indictment is not duplicitous because each count plainly only charged one offense. *See* D.E. 24.

Similarly, the Defendant cannot establish prejudice by counsel's failure to move to dismiss the indictment as multiplicitous. "'Multiplicity' is charging a single offense in more than one count in an indictment.'" *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008) (quoting *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir. 1991)). First, to determine if an indictment is multiplicitous, a court must decide "whether Congress intended to punish each statutory violation separately." *Pandelii v. United States*, 635 F.2d 533, 536 (6th Cir. 1977). "Where this enquiry does not resolve the issue, 'the general test for compliance with the double

jeopardy clause looks to 'whether each provision requires proof of a fact which the other does not.'" *Swafford*, 512 F.3d. at 844 (quoting *United States v. Davis*, 306 F.3d 398, 417 (6th Cir. 2002)).

The superseding indictment is not multiplicitous.  Counts One and Two both charged Defendant with violations of 18 U.S.C. § 1958(a).  However, Count One required proof that Defendant used a facility of interstate commerce, whereas Count 2 required proof that Defendant caused another to travel in interstate commerce.  D.E. 24 at 1-2.  Counts Three and Four both charged Defendant with violations of 18 U.S.C § 924.  However, Count Three required proof that Defendant transferred firearms in relation to crimes of violence, whereas Count Four required proof that Defendant used and carried firearms in relation to crimes of violence.  *Id*. at 2-3.  Counts Five, Six, Seven, and Eight each charged Defendant with offenses related to firearm possession.  Count Five required proof that Defendant possessed a machinegun, Count Six required proof that Defendant possessed a gun with a removed serial number, Count Seven required proof that Defendant possessed a black firearm silencer, and Count Eight required proof Defendant possessed a silver firearm silencer.  *Id*. at 2-4.  These offenses obviously have different elements.  Counts Nine through Twelve each charged Defendant with a violation of 18 U.S.C. § 373.  *Id*. at 4-6.  Count Nine required proof that, in March 2009, Defendant solicited another to kill an agent of the ATF in violation of 18 U.S.C. § 1114, whereas Count Ten required proof that, in March 2009, Defendant solicited another to kill a person in violation of 18 U.S.C. § 1512(a)(1)(A).  Count Eleven required proof that, in April and May 2009, Defendant solicited another to kill an agent of the ATF in violation of 18 U.S.C. § 1114, while Count Twelve required proof that, in April and May 2009, Defendant solicited another to kill a person in

violation of 18 U.S.C. § 1512(a)(1)(A).  Because each Count required proof of a fact that the others do not, the superseding indictment is not multiplicitous.

Therefore, even if counsel's failure to file a motion to dismiss was deficient, the Defendant has not proven that he was prejudiced because he has not established that there was a reasonable probability that a motion to dismiss the indictment, on any of the grounds mentioned, would have been successful.

### C.  Grounds Two and Ten: Ineffective Assistance of Counsel for Failure to Move to Suppress the Statements of Two Witnesses and Jailhouse Audio Recordings

Defendant's second ground claims ineffectiveness for failure to move to suppress the statements of two witnesses.  D.E. 98 at 13.  The United States presented two witnesses, Patrick Holder and William Jewel, who testified to conversations that they had with Defendant while incarcerated.  D.E. 79 at 110 and 145.  Jewel testified that Defendant wanted Pennington and the ATF agent killed, and offered "$4,000 to kill each one of them or $10,000 to bring them to him." *Id*. at 155-56.  Moreover, Jewel stated that Defendant wanted Jewel to testify falsely that Pennington had tried to sell Jewel the guns Defendant possessed.  *Id*. at 158.  Similarly, Holder testified that Defendant wanted him to assassinate a list of people, including Pennington and agent Hooker.  *Id*. at 119-124.  This evidence led to the additional charges in Counts Nine through Thirteen of superseding indictment on August 7, 2009.  D.E. 24.  Both witnesses wore audio recording devices during their conversations with Defendant.  However, only the recordings from Jewel were introduced into evidence at trial.  D.E. 79 at 164-65, 169; D.E. 46 at 3.

Defendant asserts that his Sixth Amendment right to counsel had attached at the time of these conversations.  D.E. 98 at 14.  Therefore, he argues, defense counsel should have moved to suppress these statements.  *Id*.  Moreover, Defendant claims in Ground Ten of his motion that

counsel was ineffective for failing to move to suppress the audio recordings of conversations between Jewel and Defendant on the basis that they were illegal wiretaps.  D.E. 107 at 18. Because these claims are intertwined, they are considered together.

Defendant's claims of ineffective assistance of counsel, in both Grounds Two and Ten, fail because he cannot establish that a motion to suppress either the testimony or the recordings of the jailhouse informants would have had any merit under Sixth Amendment precedent. Defendant's claim implicates the interplay between the *Strickland* standard and the elements of a Sixth Amendment right to counsel.  In certain circumstances, counsel's failure to move to suppress evidence could be grounds for habeas relief.  *See Kimmelman v. Morrison*, 477 U.S. 365 (1886).  When failure to litigate a suppression issue is the principal allegation of ineffectiveness, in order to demonstrate actual prejudice, Defendant must prove that his suppression claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.  *Id*. at 375 (describing the standard in the context of a Fourth Amendment claim).  Here, Defendant must demonstrate that suppression based upon the Sixth Amendment is meritorious and that without the evidence in question, the verdict would have been different.  Defendant is unable to do either.

The Sixth Amendment right to counsel attaches after "adversary judicial proceedings" have been initiated against the defendant, "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  *United States v. Gouveia*, 467 U.S. 180, 187-188 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).  A violation of the Sixth Amendment occurs when law enforcement "intentionally creat[es] a situation likely to induce [defendant] to make incriminating statements without the assistance of counsel."  *United States v. Henry*, 447 U.S. 267, 274 (1983).  "The right to counsel applies not only to direct

confrontations by known government officers, but also to 'indirect and surreptitious interrogations' by covert government agents and informants." *Ayers v. Hudson*, 623 F.3d 301, 309 (6th Cir. 2010) (quoting *Henry*, 447 U.S. at 273). Moreover, the Sixth Amendment right to counsel is offense specific and thus "raises no bar…to the use of any statements that incriminate the defendant on uncharged offenses." *United States v. Ford*, 176 F.3d 376, 380 (6th Cir. 1999).

The conversations between Defendant and Holder occurred in March of 2009, and the conversations with Jewel occurred in April of 2009. D.E. 79 at 114, 151. The recordings of conversations between Defendant and Jewel that were played at trial were made from conversations in April and May of 2009. D.E. 46 at 3. At the time of these conversations, Defendant had been indicted only on the first eight counts of the indictment. D.E. 13. Therefore, any testimony or recording concerning the factual basis for Counts Nine through Thirteen of the superseding indictment would not be subject to suppression under *Ford* as those were "uncharged offenses" at that time. In other words, at the time the conversations occurred and the recordings were made, Defendant's Sixth Amendment right to counsel had not attached with respect to those offenses.

Some testimony given by Holder and Jewel was related to the charges to which the right to counsel had attached. If, at the time the statements were made, the government had intentionally created a situation likely to induce defendant to make incriminating statements and the witnesses were acting as government agents or informants, the Sixth Amendment may have been violated. Here, defense counsel could not have reasonably argued that the government intentionally created a situation likely to induce incriminating statements from the Defendant. Any statements made by Defendant regarding the offenses to which the Sixth Amendment right had attached were made before either witness spoke to law enforcement. *See* D.E. 79 at 115-

127, 149-160 (testimony of Patrick Holder and William Jewel regarding conversations with Defendant before Holder or Jewel spoke with law enforcement).  Moreover, with one very limited exception, the recordings, which were made after the witnesses spoke to law enforcement, contain no statements by Defendant regarding the charges in the first indictment. *See* D.E. 46 at 4 (Plaintiff's Exhibits CT-8 and CT-9).[2]  Defendant cannot establish that law enforcement intentionally created a situation that violated his Sixth Amendment right to counsel.

For the reasons stated above, a motion to suppress this evidence based on the Sixth Amendment right to counsel would not have been meritorious and therefore Defendant cannot show deficient performance.  Moreover, even if Defendant could establish that the evidence should have been suppressed, he cannot establish that the result of trial would have been different.  Notably, Defendant was found not guilty on all but one of the charges premised upon the evidence he attacks in Grounds Two and Ten.  Given the significant amount of evidence against him, even if this evidence were suppressed, Defendant has not established a reasonable probability of a different outcome on Count Thirteen.

### D.  Ground Three: Ineffective Assistance of Counsel for Failure to Raise a Claim or Defense of Manufactured Jurisdiction

Defendant's third claim of ineffective assistance of counsel is that counsel failed to raise a claim or defense that the United States, specifically the ATF, manufactured federal jurisdiction in this case concerning Counts One and Two.  D.E. 98 at 15; D.E. 107 at 6.  Defendant argues that the government created a "False Jurisdiction [sic], by buying a phone and only having that phone carry an out of state phone number, in Nevada, when all phone calls placed to the government's phone number never left the state, the government agent 'Hooker' and the phone,

---

[2] The limited exception is Defendant's mere response of "yeah" to Jewel's suggestions that Pennington was "no good" for calling Defendant and taking him to the ATF agent.  Plaintiff's Exhibit CT-9 at 8.  Given the overwhelming evidence against Defendant, the suppression of these vague and isolated statements would not have created a reasonable probability of a different verdict.

were both within the state of Kentucky, along with the Defendant Barnett."  D.E. 107 at 6. Because all communications were within the state, Defendant asserts that that no violation of the law could have occurred.  *Id*.  Had counsel raised this defense, he claims "the defendant's case might have been dismissed" and "defendant would've had this arguement [sic] for appeal."  *Id*. The United States responds that manufactured jurisdiction is a dubious concept that, under precedent, would not have afforded Defendant any relief at trial or on appeal.

Here, Defendant cannot establish ineffective assistance of counsel because counsel's failure to claim manufactured jurisdiction was not deficient performance.   Manufacturing jurisdiction "can be fairly described as an aberration."  *United States v. Al-Cholan*, 610 F.3d 945, 953 (6th Cir. 2010).  Courts have refused to apply the concept of manufactured jurisdiction "'when there is any link between the federal [jurisdictional] element and a voluntary, affirmative act of the defendant."  *Id*. (quoting *United States v. Wallace*, 85 F.3d 1063, 1066 (2d Cir. 1996)). "The manufactured jurisdiction defense fails where '[t]he government merely afforded the opportunity, and the defendant chose to seize it.'"  *United States v. Hudson*, No. 93-2601, 1995 WL 234680, at *3 (6th Cir. April 20, 1995) (quoting *United States v. Peters*, 952 F.2d 960, 963 (7th Cir. 1992)).

Counsel could not have reasonably argued that Defendant did not take a voluntary, affirmative act that was linked to the federal jurisdictional element of the charged statutes.  In Count One of the superseding indictment, Defendant was charged with a violation of 18 U.S.C. § 1958(a), the jurisdictional element of which requires that Defendant "uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any state…"  18 U.S.C. § 1958(a).  Defendant called the undercover agent, whom he believed to be a hitman, in order to

19

arrange the crime.   D.E. 78 at 44.   Thus, Defendant undoubtedly used, voluntarily and affirmatively, a facility of interstate commerce, namely a telephone, within the meaning of the statute.  *See United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) (holding an interstate telephone call was sufficient use of interstate facilities), *aff'd,* 444 U.S. 37 (1979).

Further, Defendant did not have a manufactured jurisdiction defense to Count Two of the superseding indictment, which charged a second violation of 18 U.S.C. § 1958.  D.E. 24 at 1-2. The jurisdictional element in Count Two requires that Defendant cause another to travel in interstate commerce with the intent that a murder be committed in violation of the laws of any state.  18 U.S.C. § 1958(a).  Again, Counsel could not have reasonably argued that Defendant did not take a voluntary and affirmative act that is linked to the jurisdictional element of the statute charged.  Defendant solicited the undercover agent to travel from Kentucky to West Virginia with the intent that murder would be committed, and therefore no manufactured jurisdiction argument or defense was available to Defendant.

The cases Defendant cites in his motion do not change the analysis.  The Fourth Circuit case, *Coates v. United States*, 949 F.2d 104 (4th Cir. 1991), involved federal agents that admitted that they went across state lines to make a telephone call for the sole purpose of implicating federal jurisdiction.  Further, the only jurisdictional link was the actions of the agent.  *Coates v. United States*, 949 F.2d 104, 105-106 (4th Cir. 1991).  On the other hand, Defendant's intended victim was located in West Virginia and Defendant took affirmative steps to cause the agent to cross state lines, therefore the telephone call was not the only jurisdictional link.

Similarly, the Sixth Circuit cases cited by the Defendant are not supportive of his position.  In *United States v. Hall*, 165 F.3d 29 (6th Cir. 1998), the court upheld a murder for hire conviction in which the victim was out of state and the murder was to occur in that other state.

20

In *United States v. Degan*, 229 F.3d 553 (6th Cir. 2000), the court found that a manufactured jurisdiction defense was not available when the victim was in another state and the proposed hitman was from another state.  Finally, in *United States v. Graham*, 856 F.2d 756 (6th Cir. 1988), the court upheld a conviction in which three of the four phone calls placed in a bribery scheme were initiated by the federal agents, finding that the distinction between who initiated the call does not matter.  These cases do not entitle Defendant to habeas relief.

Defendant did not have a legal or factual basis upon which to make a manufactured jurisdiction defense to either Count One or Two of the superseding indictment.  "[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance."  *Lyons v. Caruso*, 202 F.3d 269, at *3 (6th Cir. 1999) (Table).  Thus, it was not deficient performance for counsel to elect not to raise a futile manufactured jurisdiction claim.  Moreover, even if deficient performance was established, Defendant cannot establish that the defense would have been successful and thus cannot establish prejudice.  This claim fails.

### E.  Ground Four: Ineffective Assistance of Counsel for Failure to Raise a Second Amendment Claim

Defendant's next claim of ineffective assistance of counsel is based on counsel's failure to "raise a Second Amendment claim."  D.E. 98 at 15.  Defendant argues that the Second Amendment confers on an individual a right to bear arms and defense counsel should have raised this as a defense to the gun possession charges in Counts Five, Six, Seven, and Eight.  D.E. 107 at 7.  If counsel had done so, Defendant asserts that "the counts have to be dismissed."  D.E. 98 at 15.  The United States responds that while the Second Amendment does grant a right to bear arms, the right does not extend to possession and use for illegal purposes.  D.E. 106 at 15.

Defendant's claim for ineffective assistance of counsel primarily fails because he cannot establish deficient performance.  The Second Amendment provides that "the right of the people

to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. This right, however, does "not extend to possession of weapons for unlawful purposes." *United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012). Nothing in the historical understating of Second Amendment, the common law, or case law suggests that the Second Amendment protects an individual's right to possess a weapon for criminal purposes. *Id*. Here, each possession charge in the superseding indictment is based on unlawful possession that is not protected by the Second Amendment, specifically, in furtherance of his murder-for-hire scheme, of firearms not registered in the National Firearms Registration and Transfer Record, and of firearms with removed serial numbers. *See* D.E. 24 2-8.

Similar to the manufactured jurisdiction claim, Defendant's claim that counsel was ineffective for failure to raise a Second Amendment defense fails primarily because "counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons v. Caruso*, 202 F.3d 269, at *3 (6th Cir. 1999) (Table). Thus, it was not deficient performance for counsel to elect not to raise a futile Second Amendment claim. Moreover, based on this analysis, the Defendant cannot prove prejudice because the unraised argument would not have been successful. This claim fails.

### F.  Ground Five: The Judge Usurped the Role of the Jury by Determining the Firearm to be a Machinegun

In Ground Five, Defendant asserts that as to Count Four of the superseding indictment it was the District Judge, and not the jury, who determined that the gun was a "machinegun" and that therefore he is required to be resentenced.[3] D.E. 98 at 15. However, in Count Four of the superseding indictment, it is not an essential element that the firearm be a machinegun. D.E. 24

---

[3] The Court notes that Defendant's Ground Five for relief is procedurally defaulted because it was not raised on appeal. However, because the claim is easily disposed of on its merits, the Court addresses it despite the procedural bar.

at 2-3.  The statute, 18 U.S.C. § 924(c)(1), only requires use or carrying "firearms" during and in relation to the crimes of violence in Counts One and Two.  *Id*.  Therefore, the determination of whether the firearm was a machinegun was not necessary to a conviction on Count Four and Defendant's claim fails.   Additionally, Count Four charged possession of a silencer for the machinegun and a pistol with silencer that Defendant does not challenge in this theory, therefore he cannot establish prejudice.

In Count Five, however, it is an essential element that the weapon possessed be a machinegun.  *See* 18. U.S.C. 922(o)(1).  However, the record does not support that it was the District Judge and not the jury who acted as the factfinder in Defendant's case.  Jury instruction number thirteen informed the jury that in order to convict Defendant on Count Five of the indictment, they must find that "the defendant knowingly possessed a machinegun."  D.E. 47 at 18.  The jury returned a finding of guilty on that Count (D.E. 49 at 1), and it is presumed that the jurors followed the Court's instructions.  *See Francis v. Franklin*, 471 U.S. 307, 325, n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given to them.")   Therefore, it was the jury who determined that the firearm was a machinegun and the District Judge did not usurp this power from the jury.  This claim fails.

### G.  Ground Six: Ineffective Assistance of Counsel for Failure to Raise a Valid Affirmative Defense

In Ground Six, Defendant alleges ineffective assistance of counsel for failure to raise a valid affirmative defense.  D.E. 98 at 16.  The affirmative defense referenced is that under 18 U.S.C. § 922 he was allowed to legally possess the machinegun.  *Id*.; D.E. 107 at 8.  Defendant claims that he purchased the gun at a gun show and came into possession of the weapon prior to

23

May 15th, 1986. D.E. 107 at 8. The United States responds that the record does not support the requirements needed in order to assert this affirmative defense.

Defendant is unable to demonstrate deficient performance because the affirmative defense of lawful possession of the machinegun was not available to him. In Count Five of the superseding indictment, Defendant was convicted of a violation of 18 U.S.C. § 922(o)(1), which prohibits the knowing and unlawful possession of a machinegun. *See* 18 U.S.C. § 922(o)(1). However, the statute provides an exception if the machinegun was lawfully possessed before May 19, 1986. 18 U.S.C. § 922(o)(2)(A),(B); *United States v. Fisher*, 149 F. App'x. 379, 382-83 (6th Cir. 2005). This affirmative defense requires proof that the weapon was registered in the National Firearms Register and Transfer Record. *United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996).

At Defendant's trial, the United States introduced evidence that no firearm in the National Firearms Register and Transfer Record was registered in Defendant's name. *See* D.E. 79 at 110 (Testimony of Denise Brown that Robert Herald Barnett has no firearms registered in the National Firearms Register and Transfer Record); D.E. 106-18 (Government Trial Exhibit 32; National Firearms Register and Transfer Record for Robert Herald Barnett). Thus, Defendant cannot establish ineffectiveness because counsel's failure to raise futile arguments does not amount to deficient performance. Moreover, Defendant cannot establish prejudice because there is not a reasonable probability that the argument would have been successful. This claim fails.

### H. Ground Seven: Ineffective Assistance of Appellate Counsel for Failure to Raise a Valid Issue on Appeal

Count Seven of Defendant's § 2255 motion alleges "ineffective of appellate counsel for to raise [sic] properly on appeal a valid issue." D.E. 98 at 16. Judge Wehrman held that Ground

Seven in Defendant's original § 2255 motion was "so terse and vague as to really raise no discernible issue at all" and that any arguments in the supplemental memorandum did not relate back to the original § 2255 motion.  D.E. 114 at 8-9.  Therefore, Defendant's claim is limited to what is contained in the original § 2255 motion.  *Id* at 9.

Ineffective assistance of appellate counsel claims are governed by the same *Strickland* standards as claims of ineffective assistance of trial counsel.  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).  However, "[a] motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations."  *Aguirre v. United States*, No. 2:06-CR-76, 2012 WL 3191958 (E.D. Tenn. Aug. 2, 2012) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Defendant has not identified any claims that appellate counsel failed to raise on appeal that should have been raised.  Without specific information as to how counsel was allegedly constitutionally deficient, the standard of deference to counsel found in *Strickland* controls.  That standard is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland,* 466 U.S. at 689.  Defendant has failed to overcome that presumption.  This claim fails.

## I. Ground Eight: Ineffective Assistance of Counsel for Failure to Raise an Entrapment Defense

In Ground Eight of his original § 2255 motion, Defendant alleges ineffective assistance of counsel for failure to raise an entrapment defense.  D.E. 98 at 16.  Limited additional argument on this Ground is presented in Defendant's supplemental memorandum.  D.E. 114 at 9.  Defendant argues that he is a victim of the informants and agents creating their case, as they controlled and mislead Defendant, who never "had any idea of hurting anyone."  D.E. 107 at 13.  The argument goes that counsel should have raised the entrapment defense because Defendant was without the intent or prior willingness to commit the crime.  *Id*. at 14.  The United States

asserts that Defendant was predisposed to commit the crimes and thus cannot establish that an entrapment defense would have been successful or meritorious.  D.E. 106 at 17.

Defendant's claim primarily fails because he cannot establish deficient performance.  The central inquiry of the entrapment defense "'is whether law enforcement officials implanted a criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who was already predisposed to do so.'"  *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010) (quoting *United States v. Pennell,* 737 F.2d 521, 534 (6th Cir. 1984)).  "A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity."  *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002).  Predisposition "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime."  *Mathews v. United States*, 485 U.S. 58, 63 (1988).  When determining predisposition, some factors to consider are: (1) the character and reputation of the defendant; (2) whether the suggestion of the criminal activity was made by the government initially; (3) whether defendant was engaged in the criminal activity for profit; (4) whether defendant evidenced reluctance to commit the crime, overcome only by repeated government inducement and persuasion; and (5) the nature of the inducement or persuasion supplied by the government.  *Khalil*, 279 F.3d at 365.

The evidence at trial amply establishes Defendant's predisposition to engage in criminal activity.  Defendant initiated the criminal activity with Pennington, even though he initially indicated that he only wanted the target's testicles, eyes, and thumbs returned to him and that the hitman should leave the target alive.  D.E. 106-6 at 26.  On multiple occasions Defendant told the undercover agent to kill the target and, if his son got in the way, to kill him as well.  *Id*. at 25-

26; D.E. 106-7 at 13-18.  While there was evidence that the agent told Defendant the actions were likely to kill the target, this cannot reasonably be characterized as repeated government inducement and persuasion.  Defendant had, at minimum, the intent to commit serious bodily harm to the target before he or Pennington came in contact with the government agent, and Defendant was therefore already predisposed to engage in criminal activity.  Moreover, there is no evidence in the record that any of the jailhouse informants took any actions evidencing repeated inducement and persuasion of Defendant.

Counsel's failure to assert an entrapment defense was not unreasonable because of the significant evidence of Defendant's predisposition to commit the offenses charged.  Thus Defendant has failed to establish either deficient performance or prejudice.

### J. Ground Nine: Ineffective Assistance of Counsel for Failure to Adequately Raise that Violation of a State Law is an Essential Element of 18 U.S.C. § 1958(a) that Jury Must Find

Ground Nine of Defendant's § 2255 motion is that "counsel failed to adequately raise the fact that 'some state law' has been violated is an essential element of the murder for hire statute that must be found by The Jury."  D.E. 98 at 16.  Judge Wehrman found that the Ninth Ground in his supplemental brief did not relate back because it was a newly-raised argument which merely referenced the ground in the original motion.  D.E. 114 at 10.  Therefore, Defendant's claim is limited to what is contained in the original § 2255 motion.  *Id.*

Defendant's claim is not sufficiently stated or developed so as to be meaningfully considered by the Court.  To the extent that Defendant is arguing that counsel should have raised the fact that 18 U.S.C. § 1958(a) requires that the jury find the state law has been actually violated, he cannot establish prejudice.  As the Sixth Circuit pointed out in Defendant's appeal, while "state law may be a component of a federal criminal law, that component is different from

27

a fact which must be proven." D.E. 90 at 4 (citing *United States v. Wynn*, 987 F.2d 354, 358 (6th Cir. 1993). Even if counsel had made this argument, it would have failed and thus no prejudice is established. Furthermore, "[a] motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations." *Aguirre v. United States*, No. 2:06-CR-76, 2012 WL 3191958 (E.D. Tenn. Aug. 2, 2012) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Here, Defendant has not has not developed or provided an adequate factual basis for the Court to determine how counsel was deficient. Therefore, the "highly deferential" standard from *Strickland* applies. This claim fails.

### III.  CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

## IV.  RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion (D.E. 98) for 28 U.S.C. § 2255 relief.   Because the record conclusively shows that Defendant is not entitled to relief on the denied grounds, the motion for an evidentiary hearing (D.E. 140) should be **DENIED**.   The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 3rd day of February, 2015.

Signed By:

Hanly A. Ingram

United States Magistrate Judge