UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,          ) | |
| )  | |
| Plaintiff/Respondent,          )  | No. 5:09-CR-67-JMH-HAI |
| )  | No. 5:13-CV-07315-JMH-HAI |
| v.          )  | |
| )  | SUPPLEMENTAL RECOMMENDED |
| ROBERT HERALD BARNETT,          )  | DISPOSITION |
| )  | |
| Defendant/Movant.          )  | |
| )  | |
| )  | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On September 27, 2013,[1] Defendant Robert Herald Barnett filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, and later filed a supporting memorandum. D.E. 98, 107.  The undersigned issued a Recommended Disposition on February 3, 2015. D.E. 148.  On March 3, 2015, District Judge Hood rejected, in part, the Recommended Disposition. D.E. 151.  Judge Hood referred the matter back to the undersigned to conduct a limited evidentiary hearing and issue a further recommended disposition with respect to Ground One of Defendant's § 2255 Motion. *Id.* at 6.  The Court held an evidentiary hearing on May 8, 2015. D.E. 162.  For the reasons that follow, Defendant has failed to establish that he is entitled to relief with respect to Ground One of his § 2255 Motion. Therefore, for the reasons stated in the original Recommended Disposition (D.E. 148), except for the specific claims addressed herein, and for the reasons that follow, the Court

---

[1] Although Defendant's Motion was not docketed by the Clerk until October 8, 2013, Defendant declared under penalty of perjury that he placed the Motion in the prison's mailing system on September 27, 2013.  D.E. 98 at 17. Thus, the Court treats the Motion as having been filed on September 27, 2013.  *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 270–72 (1988) to section 2255 motions).

**RECOMMENDS** that his § 2255 Motion (D.E. 98) be **DENIED**. The Court further **RECOMMENDS** that no Certificate of Appealability be issued.

## I. BACKGROUND

For the purposes of this limited Recommended Disposition, the Court provides a brief summary of the factual background.[2] Defendant was charged in 2009 pursuant to an eight count indictment related to an alleged murder for hire conspiracy. D.E. 13. Defendant was accused of conspiring with another to hire a hitman to kill an individual who allegedly owed Defendant money. Unknown to Defendant, the purported hitman was an undercover Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agent. Defendant was video recorded on several occasions describing the details of the murder, and the method of payment for the crime. He was also video recorded giving the agent a machinegun, a silencer to screw into the machine gun, a pistol with a silencer, ammunition, and five thousand dollars in cash. Defendant was later arrested with three thousand dollars in cash intended for the undercover agent. On August 7, 2009, Defendant was charged in a superseding indictment with five additional charges related to alleged attempts, while in custody, to have the undercover agent murdered. D.E. 24.

On June 11, 2010, following a jury trial, Defendant was found guilty of nine counts in the superseding indictment, including a charge of carrying and using a machinegun during and in relation to a crime of violence, which carried a statutory mandatory minimum of not less than thirty years imprisonment. D.E. 49. Defendant was sentenced by District Judge Forester to 480 months of imprisonment to be followed by three years of supervised release. D.E. 58. On September 27, 2013, Defendant filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, and filed a memorandum in support of the

---

[2] A more detailed factual background is contained in the Court's previous Recommended Disposition. *See* D.E. 148 at 2-8.

Motion in January, 2014.  D.E. 98, 107.  Among his numerous claims, Count One alleges ineffective assistance of counsel during pre-trial and plea negotiations.  D.E. 98 at 8.

On February 3, 2015, the Court issued a Recommended Disposition recommending that Defendant was entitled to no relief and that his Motion be denied.  D.E. 148.  The Court also recommended that Defendant's motion for an evidentiary hearing should be denied.  *Id.*  District Judge Hood rejected in part the Recommended Disposition, and referred the matter back to the undersigned "to conduct an evidentiary hearing and issue a further Recommended Disposition with respect to Ground 1 of Defendant-Petitioner's Motion[.]"  D.E. 151 at 6.  The Court held an evidentiary hearing on May 8, 2015.  D.E. 162.

## II.  DISCUSSION

Ground One of Defendant's Motion alleges that he was denied effective assistance of counsel during plea negotiations.[3]  In his Motion and supporting memorandum, Defendant claims that his attorney, Brent Caldwell, advised him not to take any plea deals because Caldwell guaranteed victory at trial.  D.E. 98 at 8.  Further, according to Defendant, Caldwell told Defendant that he would "never" be found guilty.  D.E. 107 at 2.  In his motion for an evidentiary hearing, however, Defendant alleges that his counsel advised him and his family that Defendant would "do a little time, but not forever, about ten years if found guilty" and that Defendant was "only facing 10 years tops in federal prison; as these charges are just over charged to scare you so that you will 'just plead guilty[.]"  D.E. 140 at 4-6.  Finally, Defendant alleges that he "would have taken a plea deal that was reasonable."  D.E. 98 at 8.

---

[3] Ground One of Defendant's Motion (D.E. 98) and supporting memorandum (D.E. 107) allege additional claims of ineffective assistance of counsel premised upon an alleged failure to file pre-trial motions.  Judge Hood's order (D.E. 151) refers only to Defendant's claims that "his counsel acted ineffectively because he counseled [Defendant] not to enter into a plea agreement and guaranteed a victory at trial, stating that Defendant could not be convicted on any charges as a matter of law."  D.E. 151 at 2.  Therefore, the Court limits this supplemental Recommended Disposition to that claim.

3

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must take into

4

consideration the "totality of the evidence before the judge or jury." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697.

A criminal defendant has a right to effective assistance of counsel during plea negotiations. *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012). In order to assert a successful claim of ineffective assistance of counsel during plea negotiations, the Defendant must establish both deficient performance and prejudice. The latter requires a showing of "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 1409. As the § 2255 movant, a defendant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."). Therefore, Defendant has the burden to establish that counsel was deficient by guaranteeing a victory at trial and that without this guarantee, a reasonable probability exists that he would have pled guilty and received a more favorable conviction or sentence.

At the evidentiary hearing, Defendant testified that Caldwell told him that "I can't let you take a 20-year plea. I won't let you take a ten-year plea because we got a winning hand." D.E. 163 at 9. According to Defendant, Caldwell repeatedly told him that they had a "winning hand." *Id.* Defendant further testified that he and Caldwell "never" discussed the negative consequences of losing at trial, yet Caldwell told him "[t]here was a possibility, slim possibility that you could get ten year, but you don't have nothing to lose[.]" *Id.* at 10-11. He testified that Caldwell

"absolutely" did not tell him that he was going to get thirty or more years of imprisonment, or even discussed the likelihood of being convicted. *Id.* at 15, 20.

Defendant also testified that, based on information he had on other "cold cases," Caldwell told him that "the judge will usually, usually give you a 50 percent reduction" on his sentence for cooperation. *Id.* 15-17. Moreover, Defendant testified that he disagreed with Caldwell's affidavit, which indicated he spent numerous hours with Defendant, and stated that each visit with Caldwell "would have been less than thirty minutes." *Id.* at 13.

Finally, Defendant introduced a letter into evidence that he allegedly wrote to Caldwell. *See id.* at 22-23; D.E. 161. The letter is dated "5-18-2010" and states that Defendant is "thinking about that 10 years plea deal." *May 8, 2015 Evidentiary Hearing, Defendant's Exhibit 1*. The letter indicates that Caldwell told Defendant he "should not take the 10 year we would beat it at trial." *Id.* After discussing some facts of the case, the Defendant writes that "I will take the plea, just come see me, ok soon as you get this letter." *Id.* Defendant testified that he placed the letter in the U.S. mail and addressed it to Caldwell at the address on the Caldwell's business card. D.E. 163 at 29. According to Defendant's testimony, in order to obtain a copy of the letter before sending it while he was in pre-trial custody, he first mailed a copy of the letter to his family, they made a copy, and sent the copy and the original back to him. *Id.* at 30-31. Then, according to Defendant, he sent the original to Caldwell, and kept the copy himself. *Id.* at 31. Moreover, Defendant testified that, even though he saw Caldwell after mailing the letter, and that he believed the letter to be important, he did not recall discussing the letter with Caldwell after sending it. *Id.* at 29-30.

Defendant's trial counsel, Brent Caldwell, also testified. Caldwell testified that he never told Defendant they had a "winning hand," or that he would not let Defendant take a plea deal.

6

*Id.* at 45-46. He testified that, during the course of his representation, he and Defendant had "numerous meetings" and his records reflected that he met with Defendant for a total of "46.6 hours" during the representation. *Id.* at 51. He testified that, during these meetings, he and Defendant went through and discussed the "volume of discovery" that was provided by the United States. *Id.* at 34-35. Caldwell further testified that "on several occasions [Defendant] asked me, 'What's the best evidence they have against me?'…and I would say to him, '[Defendant], the best evidence they have against you is your own words, it's what's on those tapes, what's on those videos, your own words.'" *Id.* at 38. Moreover, Caldwell testified that he told Defendant "on numerous occasions it was a very, very difficult case and he was likely to be convicted." *Id.* at 39. He testified that the charge that carried "the thirty-year mandatory minimum was the hammer" and that he discussed the implications of this charge with Defendant. *Id.* Caldwell testified that he never gave Defendant a guarantee of a 50 percent reduction for cooperation relating to the other crimes because "[t]here is no guarantees on a 5K, and I would never say that." *Id.* at 54.

Caldwell also testified that the "government never made a written plea agreement offer" to Defendant. *Id.* at 39-40. According to Caldwell, the United States would not "come off the thirty-year mandatory minimum charge" when talking about a potential plea agreement. *Id.* at 40. He testified that the United States "made it clear" that, based on the conduct described in the superseding indictment, the United States believed that Defendant "was a very dangerous man and should never be allowed out of prison and they were never going to come off of that thirty-year offer[.]" *Id.* at 40-41. According to Caldwell, Defendant was aware of this and indicated to Caldwell that he could not do a plea deal of thirty years because it was "a death sentence"

7

because he was 71 at the time. *Id.* at 41. Caldwell testified that it was Defendant's "decision to go to trial[.]" *Id.*

Regarding the letter Defendant introduced at the hearing, Caldwell testified that he did not "recall ever seeing [the letter] at all." *Id.* at 43. He again testified that even though the letter purports to talk about the possibility of a ten-year plea deal, no such plea deal was ever offered, and Defendant never said that he would take a ten-year plea deal. *Id.* at 43-44. He also testified that he did not recall discussing the letter with Defendant. *Id.* at 63.

Finally, Caldwell testified that he was admitted to the bar in 1977 and, among other jobs, has been an assistant Commonwealth's Attorney, a County Attorney, and Deputy Attorney General. *Id.* at 56-57. He estimated that he has participated in at least "100 to 120" jury trials throughout his career. *Id.* at 59-60. Included in this number were "five or six" federal criminal jury trials. *Id.* at 60. He testified that, based on this experience, he had never, and would never, guarantee any client a victory at trial "[b]ecause you never know what a jury is going to do." *Id.* at 61.

Based on the briefing and the evidence presented at the evidentiary hearing, Defendant has not proven that Caldwell was deficient or that he suffered prejudice as a result. His testimony that Caldwell guaranteed victory at trial and would not let him take a plea agreement is not credible for several reasons. As suggested by the Sixth Circuit, the Court details its reasoning as to this credibility determination. *See United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990).

First, Defendant's version of the advice he got from Caldwell is internally inconsistent. In his motion, which he submitted under penalty of perjury, he claims that Caldwell "advised and guaranteed [him] that as a matter of law he could not be convicted[.]" D.E. 98 at 8. In his

8

supplemental memorandum, again submitted under penalty of perjury, he claims that "Caldwell promised the [Defendant] that" [sic] He would never be found guilty[.]". D.E. 107 at 2. In contrast, at the evidentiary hearing, Defendant testified that Caldwell told him there was a slim possibility he could be convicted. D.E. 163 at 11. Additionally, in his motion for an evidentiary hearing, again submitted under penalty of perjury, Defendant asserts that Caldwell told him and his family that "Defendant is going to do a little time." D.E. 140 at 4. Not only does Defendant claim Caldwell both told him he could and could not be convicted, he also swears that "he never discussed the likelihood of being convicted" with Caldwell. D.E. 163 at 19-20. Because Defendant has presented different versions of the critical factual component of his claim, his testimony is not credible.

Second, Defendant also testified that he and Caldwell never discussed the potential of a sentence of thirty years of imprisonment in relation to these charges. *See* D.E. 163 at 19-20. This testimony is also not credible. Defendant was charged in the superseding indictment with six counts that carried a maximum of ten years imprisonment, five counts that carried a maximum of twenty years imprisonment, a count that carried a maximum of five years imprisonment, and Count 4 which carried a mandatory minimum of thirty years imprisonment to be served consecutive to any other term of imprisonment imposed. D.E. 24 at 8. It is unbelievable that any attorney, let alone an attorney with as much criminal defense experience as Mr. Caldwell, would not at least review the potential penalties on the most serious charge with their client. This is especially true with regards to any charge with a mandatory minimum of thirty years such as Count 4 of the superseding indictment.

Defendant's testimony regarding the letter is likewise not credible. He testified that he believed the letter to be important when he wrote it. D.E. 163 at 29. Defendant further testified

9

that in order to have a copy of the letter, he went through the tedious task of mailing the letter from jail to his family, having them make a copy of the letter, then having them mail the copy and original back to Defendant in jail. Then, after this lengthy process, Defendant claims he mailed the original to Caldwell and kept the copy for himself at the jail over several years. *Id.* at 30-31. Despite its acknowledged importance, and Defendant's significant efforts to mail the letter, he testified that he did not recall ever discussing the letter at any time with Caldwell, even though they saw each other after he mailed the letter. *Id.* at 29-30. It is not believable that Defendant took such substantial efforts to mail the letter but would then fail to discuss, or even mention it, to Caldwell when he saw him. Finally, that a copy of the letter was first presented at the evidentiary hearing instead of along with Defendant's numerous and detailed written filings supports the conclusion that it is not authentic. In other words, if the letter and Defendant's testimony were authentic, Defendant would have presented it in support of his original § 2255 Motion.

Further, the contents of the alleged letter are questionable. In the letter, Defendant states, in regards to an alleged ten-year plea offer, "I will take the plea you just come see me, ok soon as you get this letter." The letter, therefore, implies that there was a ten-year plea offer from the United States. However, this is contradicted by Defendant's own testimony. *See* D.E. 163 at 19 (Defendant stating he never saw a ten-year plea deal). Moreover, Caldwell specifically recalled that, not only was there not a ten-year plea offer, the United States was not willing to go below an offer of thirty years because it believed Defendant to be a highly dangerous individual. *See id.* at 40-41 (Caldwell testifying that the United States would not "come off" the thirty-year plea offer after the charges alleged in the superseding indictment).

10

Finally, it is not believable that an attorney, with as much trial experience as Caldwell, would guarantee a victory for his client. Caldwell estimated that he had participated in at least 100 to 120 trials over the course of his lengthy legal career. *Id.* at 60. Moreover, Caldwell testified that "you never know what a jury is going to do. What a jury does is one of the most unpredictable things that I have ever seen." D.E. 163 at 61. Given the substantial amount of evidence against Defendant, and Caldwell's significant amount of experience, the Court cannot credit Defendant's claims that Caldwell guaranteed a victory at trial.

Based on the record and the evidence that was presented at the evidentiary hearing, Defendant has not met his burden to establish that Caldwell guaranteed a victory at trial and that Defendant rejected any alleged plea offer as a result of that advice. Therefore, Defendant cannot establish deficient performance of counsel. Additionally, Defendant has wholly failed to establish prejudice. His claims that he would have accepted a ten or twenty year plea offer have no merit because there is no credible evidence that such an offer was ever made or was even a possibility. Indeed, no written plea offer was ever made by the United States. Further, there was evidence, prior to the hearing, that Caldwell had presented Defendant with an oral thirty-year plea offer from the government, which was rejected by Defendant. *See* D.E. 106-1 at 2-3. At the hearing, however, Defendant failed to present any credible contrary evidence that he would have accepted a thirty-year plea deal. Thus, Defendant has not established a reasonable probability of a more favorable outcome.

In sum, no credible evidence supports Defendant's claim of ineffective assistance of counsel. It therefore fails.

### III.  CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). In addition to the Grounds considered in the Court's previous Recommended Disposition (D.E. 148), the Court has considered the issuance of a Certificate of Appealability as to Ground One as presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

### IV.  RECOMMENDATION

For the reasons discussed above, and in the Court's previous Recommended Disposition (except as to the portion of Ground One addressed above) (D.E. 148), the Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion (D.E. 98) for 28 U.S.C. § 2255 relief. The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served

with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

**Notably, District Judge Hood ordered that Defendant shall file, in addition to any objections to this Recommended Disposition, any objections to the Court's previous Recommended Deposition within fourteen days of the entry of this Recommended Disposition. D.E. 151 at 7. Thus, the entry of this Supplemental Recommended Disposition begins the objections period.**

This the 1st day of September, 2015.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge

13